UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER SHANNON DEWEESE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:23-CV-885 RLW |
| ) | |
| ANNE L. PRECYTHE, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of self-represented plaintiff Christopher Shannon DeWeese, an inmate at the Missouri Eastern Correctional Center ("MECC"), for leave to commence this civil action without payment of the required filing fee. ECF No. 5. Having reviewed the motion and the financial information submitted in support, the Court determines plaintiff lacks sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $32.83. *See* 28 U.S.C. § 1915(b)(1). In addition, for the reasons discussed below, the Court will partially dismiss plaintiff's amended complaint and will order the Clerk to issue process or cause process to be issued on the non-frivolous portions of the complaint.

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28

U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

In support of the motion for leave to proceed *in forma pauperis*, plaintiff submitted a copy of his certified inmate account statement. ECF No. 7. A review of plaintiff's account indicates an average monthly deposit of $164.17 and an average monthly balance of $14.83. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $32.83, which is 20 percent of plaintiff's average monthly deposit.

**Background**

This action arises out of a previous case filed by another inmate at the MECC, David Wilson. *See Wilson v. Precythe, et al.*, 4:23-CV-890 MTS. On July 13, 2023, Mr. Wilson filed a 42 U.S.C. § 1983 prisoner civil rights action on behalf of himself and fourteen other inmates who were allegedly awakened at 1:00 a.m. on March 23, 2023, and bound with zip ties for nearly four hours while their cells were searched. In total, 264 inmates were bound by zip ties and left on the concrete floor for four hours during the night, without word of when the situation would be resolved. Several medical emergencies occurred.

The Court conducted an initial review of Mr. Wilson's complaint and found that he could bring his own claims against defendants, but could not bring claims on behalf of the other inmates. The Court severed the action, and opened a separate case for each of the fourteen inmates. In their individual cases, the Court ordered the fourteen separate plaintiffs to file amended complaints and applications to proceed in the District Court without payment of fees and costs if they sought to continue their individual cases.

**Amended Complaint**

On August 16, 2023, plaintiff filed an amended complaint on a Court-provided form along with a four-page document titled "Affidavit Of: Chris DeWeese RE: Cruel and Unusual Punishment," which the Court construes as his statement of claim. ECF Nos. 4, 6. He brings this action under 42 U.S.C. § 1983 against five defendants: (1) Anne Precythe, Director of the Missouri Department of Corrections; (2) Gregory Hancock, MECC Warden; (3) Sergeant McDaniel, MECC Correctional Officer II; (4) Lieutenant Jones, MECC Correctional Officer III; and (5) Major Minchue, Supervisor of Custody. ECF No. 4 at 2-4. Defendants McDaniel and Minchue are sued in their official capacities only, while defendants Precythe, Hancock, and Jones are sued in their individual capacities only. *Id.*

According to Plaintiff, at 1:23 a.m. on March 23, 2023, the Correctional Emergency Response Team ("CERT") arrived to his housing unit and "removed everyone from their cells, in various state[s] of undress, zip cuffed and placed [them] on the concrete floor sitting with [their] hands behind [their] backs." ECF No. 6 at 1. Plaintiff states they were left in the same position for over three hours zip cuffed and without access to the bathroom. During this time, he claims inmates suffered from medical emergencies and did not receive care. *Id.*

After being in zip cuffs for approximately an hour and a half, plaintiff tried to stand because his hands were numb and his legs were tingling, but he fell back down due to a calf spasm. *Id.* at 2. Plaintiff requested adjustment of his zip cuffs. *Id.* Defendant McDaniel told him "only CERT had zip cuffs and the authority to remove them and none of them were available." *Id.* Thirty minutes later plaintiff told defendant McDaniel that he could not feel his fingers and his hands were "ice cold." *Id.* Defendant McDaniel responded by telling plaintiff he was too busy to assist and so was the medical unit. *Id.* Plaintiff then approached defendant Jones, who he identifies as a "CERT Member," and asked him to readjust his zip cuffs. *Id.*; ECF No. 4 at 3. Defendant Jones

saw the condition of his hands, but declined assistance despite allegedly having extra zip cuffs on his utility belt and being a CERT member. ECF No. 6 at 2.

At some point, plaintiff saw Warden Hancock and showed him his hands. Warden Hancock allegedly said to plaintiff: "I see what you mean . . . they're taking them off now." *Id.* Plaintiff states that once the cuffs were removed it took approximately 15 to 20 minutes for him to regain feeling in his hands and utility in his fingers, which he described as purple and swollen. *Id.* The indentations from the zip cuffs remained on his skin for at least 48 hours. *Id.*

The following day, plaintiff wrote an email to his mother and friend describing the incident and requested they forward the email to "every Missouri Department of Corrections (MDOC) official, government office and St. Louis news station." *Id.* at 3. Plaintiff states his friend received the correspondence, but his mother did not. Plaintiff indicates he received an Administrative email informing him that his correspondence was blocked for security related reasons. *Id.* He takes issue with the institution's decision to block the email to his mother as a violation of his First Amendment right of freedom of speech. ECF No. 4 at 5.

Plaintiff contends defendants Warden Hancock and Major Minchue are liable because "they were both present for the entire escapade," "neither even attempted to reset the course of the 'plan' they had devised," and they denied bathroom facilities for four hours which he alleges is two hours beyond what the institution's policy permits. *Id*. As to defendant Precythe, plaintiff argues "she is ultimately responsible for actions decisions and outcomes therefrom of her staff especially administrative staff that she has personally put in place." *Id.*

Plaintiff describes his injuries as swollen hands and fingers, ligature indentations in his wrists for approximately two days after the incident, "a slight bump on [his] head from when [he] fell over backward," and "mental health trauma from watching abuse of others." *Id.* For relief, plaintiff seeks $25,000 in punitive damages. *Id.* at 6.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

**Discussion**

Based on a careful review and liberal construction of the allegations in plaintiff's amended complaint, the Court will dismiss the official capacity claims against defendants McDaniel and Minchue, the individual capacity claim against defendant Precythe, and the First Amendment claim for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B). The Court will, however, direct the Clerk of Court to issue process as to plaintiff's claims of Eighth Amendment violations against defendants Hancock and Jones in their individual capacities only.

### A. Official Capacity Claims

Plaintiff sues defendants Sergeant McDaniel and Major Minchue in their official capacities only. *See* ECF No. 4 at 3-4. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (internal citation omitted). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Here, because defendants Sergeant McDaniel and Major Minchue are MDOC employees, naming them in their official capacities is equivalent to naming the government entity that employs them – the State of Missouri itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Walker v. Mo. Dep't of Corr.*, 213 F.3d 1035, 1036 (8th Cir. 2000) (stating that the MDOC is a state agency).

The Eleventh Amendment prohibits suits for damages against the state, agencies of the state, or state officials acting in their official capacities. *Nix v. Norman*, 879 F.2d 429, 432-33 (8th Cir. 1984). "State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them." *Will*, 491 U.S. at 71. Therefore, the amended complaint is frivolous and/or fails to state a claim upon which relief

may be granted against defendants Sergeant McDaniel and Major Minchue, who are sued in their official capacities only.

### B. Individual Capacity Claims

Plaintiff sues defendants Director Precythe, Warden Hancock, and Lieutenant Jones in their individual capacities only. *See* ECF No. 4 at 2, 4.

#### 1. Eighth Amendment Excessive Force

The Eighth Amendment's prohibition on cruel and unusual punishment, as applied to States through the Fourteenth Amendment, limits the conditions in which a State may confine convicted criminals. *Robinson v. California*, 370 U.S. 660 (1962); *Rhodes v. Chapman*, 452 U.S. 337 (1981). The Supreme Court has explained this limit as a prohibition on punishments that "involve the unnecessary and wanton infliction of pain" including those that are "totally without penological justification." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 183 (1976)); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986).

The Supreme Court has instructed that the question in Eighth Amendment excessive force cases is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312 (1986)). The use of excessive physical force against a prisoner may constitute cruel and unusual punishment even if the prisoner did not suffer serious injury. *Id.* at 9. The "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7). "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Id.* at 38.

"Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically." *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) (citing *Hudson*, 503 U.S. at 9). The test for reasonableness or the good-faith application of force depends on the following:

> whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury.

*Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002) (citing *Hudson*, 503 U.S. at 7).

### a.  Defendant MDOC Director Anne Precythe

Plaintiff fails to state an individual capacity claim against MDOC Director Anne Precythe because he does not include any allegations against her in the amended complaint. Plaintiff's only mention of defendant Precythe is the assertion that "[s]he is ultimately responsible for actions, decisions and outcomes therefrom of her staff. Especially administrative Staff that she has personally put in place." ECF No. 4 at 5. Plaintiff fails to allege facts that show how Precythe is causally linked to, and directly responsible for, violating his rights. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights). Plaintiff explicitly alleges that the other four defendants were present during the March 23rd incident, but he does not assert that defendant Precythe was on site or even aware of the conditions.

As a result, plaintiff's Eighth Amendment claim against defendant Precythe fails to state a claim upon which relief may be granted. *See also Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) (citing *Iqbal*, 556 U.S. at 676) (to state a claim under § 1983, plaintiff must plead that a

government official has personally violated his constitutional rights); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (affirming dismissal of *pro se* complaint against defendants who were merely listed as defendants in the complaint and there were no allegations of constitutional harm against them). Nothing in the amended complaint can be construed as alleging that defendant Precythe had any involvement in the incident or in any policy that gave rise to any allegedly unconstitutional conditions. This type of claim, sounding in respondeat superior, is not cognizable under § 1983. *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995); *see also Beaulieu v. Ludeman*, 690 F.3d 1017, 1030-31 (8th Cir. 2012) (supervisors cannot be held vicariously liable under § 1983 for actions of subordinate; general allegations that defendant supervises facility without specification of defendant's individual actions are not sufficient to state claim).

### b.  Defendants Warden Hancock and Lieutenant Jones

Unlike defendant Precythe, plaintiff makes specific factual allegations against defendants Warden Hancock and Lieutenant Jones, including that they were personally involved in and directly responsible for the alleged unconstitutional conduct. Although a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement, plaintiff alleges that Warden Hancock planned the CERT raid, was present during the approximately four-hour incident while inmates were having medical emergencies, did not adjust plaintiff's zip cuffs despite personally seeing swelling and discoloration, and denied access to bathroom facilities for the entirety of the raid. Plaintiff asserts that Lieutenant Jones was present during the incident and that he refused to respond to plaintiff's request for assistance after plaintiff complained of pain. Plaintiff asserts that Lieutenant Jones was carrying extra zip cuffs and was a CERT Member who could have adjusted his zip cuffs, but chose to deny him help.

The Court finds that plaintiff's amended complaint sufficiently alleges excessive force claims at this initial review stage of the litigation. As such, the Court will direct that process issue

on plaintiff's claims under the Eighth Amendment against Warden Gregory Hancock and Lieutenant Jones.

### 2. First Amendment Claim

Plaintiff alleges "the attempted suppression of [his] voice by trying to stop [his] emails to [his] family under false pretense of safety and security issue [was] a direct violation of [his] first amendment right to freedom of speech." ECF No. 4 at 5. Plaintiff appears to allege his First Amendment claim solely against Defendant Hancock by stating: "This [First Amendment violation] also falls into the purview of the Administration, over which the Warden is in charge." *Id.*

"Inmates clearly retain protections afforded by the First Amendment," including "the right to send and receive mail." *Thongvanh v. Thalacker*, 17 F.3d 256, 258 (8th Cir. 1994). But this right is subject to limitations based on the needs of the penal system. "Accordingly, prison officials may lawfully censor prison mail that is detrimental to the security, good order and discipline of the institution." *Kaden v. Slykhuis*, 651 F.3d 966, 968 (8th Cir. 2011). In light of this balance, regulations on inmate mail are valid only if they are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also Bell v. Wolfish*, 441 U.S. 520, 538 (1979) (explaining that "a particular condition or restriction of pretrial detention" is valid if it "is reasonable related to a legitimate government objective").

Notwithstanding the above legal principles, plaintiff's First Amendment claim against defendant Warden Hancock must be dismissed because the allegation against him is in his individual capacity and plaintiff has not pleaded any facts indicating the Warden was personally involved in the screening of his email correspondence. Plaintiff does not allege that any of the defendants were personally responsible for violating his First Amendment rights. *See Benton v. Kelley*, 784 F. App'x 472, 473 (8th Cir. 2019) (affirming district court's dismissal of First

Amendment claim against employees of a correctional facility because plaintiff did not provide factual support that they were personally involved in the handing of the screened letter) (citing *Martin*, 780 F.2d at 1338 (§ 1983 liability requires personal involvement in, or direct responsibility for, actions resulting in violation); *see also Beaulieu*, 690 F.3d at 1030-31 (supervisors cannot be held vicariously liable under § 1983 for actions of subordinate; general allegations that defendant supervises facility without specification of defendant's individual actions, are not sufficient to state claim). Here, plaintiff does not assert that defendant Warden Hancock knew about the emails, reviewed them, or directed that they be withheld from the recipients. As a result, plaintiff's First Amendment claim against fails to state a claim upon which relief may be granted.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* [ECF No. 5] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff must pay an initial filing fee of $32.83 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the amended complaint as to defendants Warden Hancock and Lieutenant Jones, in their individual capacities, with regard to plaintiff's Eighth Amendment claims. Defendants shall be served with process in accordance with the waiver agreement the Court maintains with the Missouri Attorney General's Office for service on Missouri Department of Corrections employees.

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the amended complaint as to defendant Anne Precythe in her individual capacity because, as to this defendant, the amended complaint fails to state a claim upon which relief can

be granted. Plaintiff's claims against defendant Anne Precythe are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the amended complaint as to defendant Warden Hancock with regard to the First Amendment claim in his individual capacity because, as to this defendant, the amended complaint fails to state a claim upon which relief can be granted. Plaintiff's First Amendment claim against defendant Warden Hancock is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the amended complaint as to claims brought by plaintiff against defendants McDaniel and Minchue in their official capacities. Plaintiff's official capacity claims are **DISMISSED without prejudice**.

An Order of Partial Dismissal will accompany this Memorandum and Order.

*Ronnie L. White*
_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 19th day of December, 2023.